```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                  CHARLESTON DIVISION
```

CONSTRUCTION INDUSTRY HEALTH
AND WELFARE TRUST, PAINTERS
LOCAL 970 GROUP, et al.

       Plaintiffs,

v.                      MISCELLANEOUS ACTION NO. 2:01-007

L.A. SAMMS CONTRACTOR, INC.,

       Defendant.

BEAM BLASTING, L.L.C. and
CITY NATIONAL BANK

       Suggestees.


## MEMORANDUM OPINION AND ORDER

Pending is plaintiffs' motion to lift stay, reinstate this civil action and re-address their motion for all monies improperly paid to defendant L.A. Samms Contractor, Inc. ("L.A. Samms"), filed March 19, 2004.[1]

---

[1] On June 18, 2004, this action was transferred to the undersigned following the death of the Honorable Charles H. Haden II. During the initial briefing of the motion in 2004, the parties provided no legal authority for their respective positions. On September 7, 2005, the court directed the parties to file supplemental memoranda of law supporting their respective positions. The final supplemental brief was received November 7, 2005.

I.

On September 20, 2000, plaintiffs instituted an ERISA action against L.A. Samms in the United States District Court for the Eastern District of Kentucky.  They sought unpaid contributions, liquidated damages, administrative late filing fees, interest, attorney fees, and costs.  On January 24, 2001, after L.A. Samms failed to appear or otherwise defend, Judge Karl S. Forester entered a default judgment order.  The face amount of the award, excluding interest, fees, and costs, was $89,773.80.  Judge Forester later entered a second judgment order awarding plaintiffs fees and costs in the amount of $2,229.40.

Following entry of the judgment orders, plaintiffs learned that one of the suggestees, Beam Blasting, L.L.C. ("Beam Blasting"), an entity located in Charleston, West Virginia, was apparently amortizing two promissory notes to L.A. Samms.  Upon learning of this stream of payments from Beam Blasting, plaintiffs registered their foreign judgments in this district on February 7, and July 6, 2001, respectively.

On October 10, 2001, plaintiffs transmitted to the Clerk in this district a writ of execution, suggestion, and a summons and process receipt and return.  On October 12, 2001, the

Clerk transmitted the suggestion to the United States Marshal for service upon Beam Blasting.  The Marshal then served the suggestion via certified mail, return receipt requested.  The return receipt lists a date of delivery of October 23, 2001, with the signature of "S.K. Burdette" appearing thereon.  The suggestion noted the foreign judgments and their amounts.  It also contained the following admonition:

> A Writ of Fieri Facias has been issued upon the Default Judgment and Order Awarding Attorney Fees and Costs, and is now in the hands of the United States Marshal for the Southern District of West Virginia, unpaid and unsatisfied.  Accordingly, the Plaintiffs, by counsel, suggest that there is liability, by reason of the lien of said Writ and upon Beam Blasting, L.L.C., Charleston, West Virginia, the Promisor under two (2) Promissory Notes payable to L.A. Samms Contractor, Inc., who is not [sic] the Default Judgment debtor.

(Suggestion at 2).[2]

On November 2, 2001, Beam Blasting answered the suggestion.  Beam Blasting noted it previously had purchased assets from L.A. Samms pursuant to an Asset Purchase Agreement.  The purchase was consummated by Beam Blasting when it delivered to L.A. Samms the two referenced promissory notes.  The first

---

[2]The writ was never served on L.A. Samms.  It is found in the official file with the designation "Returned Unexecuted--Expired" along with the notation that Larry A. Samms, L.A. Samms' president, could not be located.

promissory note, in the amount of $61,756.29, was paid by Beam Blasting in monthly installments of $1,766.64 to City National Bank. The second note, in the amount of $36,103.50, was paid by Beam Blasting in monthly payments of $1,243.78 to the West Virginia Economic Development Authority ("WVEDA").

On February 7, 2002, plaintiffs moved for an order releasing funds. They noted the amounts of the foreign judgments, service of the suggestion, and other antecedents, and then observed "neither promissory note requires Beam Blasting . . . to make the payments owed to L.A. Samms to the other entities mentioned above." (Pls.' Mot. at 2). Plaintiffs requested the court to "enter an Order directing Beam Blasting, L.L.C. to make all further payments under the above-referenced promissory notes directly to Plaintiffs until all amounts due under the registered Judgements are satisfied." (Id.)

On February 21, 2002, Beam Blasting responded to the motion. It noted that, as of the time of its answer, it had completed all payments on the promissory note held by WVEDA. Beam Blasting then noted it continued to amortize the promissory note held by City National Bank. The response brief then concludes with a "WHEREFORE" clause asking that plaintiffs' motion be denied in view of the full payment to the WVEDA. No

4

further mention was made of the monies being paid to City National Bank.[3]

In their February 21, 2002, reply brief before Judge Haden, plaintiffs contended as follows:

1.  Under West Virginia Code § 38-5-14 Beam Blasting, L.L.C. had the option of paying the monies covered by the Suggestion to Plaintiffs "before the return day of the summons" served along with such Suggestion.  If Beam Blasting had made such payment to Plaintiffs, it would have been "discharged from any further liability under the execution."  Id.  However, Beam Blasting apparently chose not to make such payment.

2.  Beam Blasting did not make the payment under the option set forth in § 38-5-14.  Instead it filed an Answer to the Suggestion as required by West Virginia Code §§ 38-5-10 and 38-5-13.

3.  Pursuant to West Virginia Code § 38-5-15, after filing its Answer Beam Blasting was to make no further payment to Judgment Debtor L.A. Samms

---

[3] On March 4, 2002, Judge Haden noted the briefing was unclear concerning City National Bank's interest in the promissory note.  City National Bank was then joined as an additional suggestee.  In a footnote, Judge Haden noted that, in view of the full payment of the WVEDA note, only the City National Bank note "remain[ed] in issue."  Construction Indus. Health & Welfare Trust v. L.A. Samms Contractor, Inc., Misc. No. 2:01-0007, slip op. at 1 n.1 (S.D. W. Va. Mar. 4, 2002).

On April 26, 2002, City National Bank answered the suggestion.  Unfortunately, the mystery surrounding its involvement with the note continued.  In its one page answer, City National Bank responded only that "[a]t the time of the said service of said Suggestion on the said City National Bank of West Virginia, it had no money in the name of L.A. Samms Contractor, Inc. in its possession or under its control."  (City Nat. Bank Ans. ¶ 2).

>      Contractor, Inc. until further Order from this
>      Court.
>
> 4.   As admitted in Beam Blasting's Response submitted
>      to the court on February 21, 2002, Beam Blasting
>      continued to make the monthly payments under the
>      Promissory Notes owed to Judgment Debtor L.A.
>      Samms after receiving and being served with the
>      Suggestion and filing an Answer in this action.
>      In fact Beam Blasting actually prepaid and
>      satisfied the Promissory note owed to L.A. Samms
>      in the amount of thirty-six thousand one hundred
>      three dollars and fifty cents ($36,103.50). . . .
>
> 5.   Under West Virginia Code § 38-5-18 Beam Blasting
>      is liable to Plaintiffs for all payments made
>      under the Promissory Notes after being served with
>      the Suggestion in this action.

(Pls.' Reply at 2-3).

On May 21, 2002, Judge Haden entered a memorandum opinion and order to show cause. Judge Haden granted the motion for an order releasing funds and directed Beam Blasting to show cause why it should not further be ordered to compensate plaintiffs for all sums paid on the promissory notes after actual notice of the execution via the suggestion. Regarding City National Bank, Judge Haden again observed:

> The rationale behind the middleman role played by City
> National and the [WVEDA] is unclear. . . . City
> National should take note of its continuing obligation
> to the judgment creditor for any sums coming into its
> possession following notice of execution.

<u>Construction Indus. Health & Welfare Trust v. L.A. Samms Contractor, Inc.</u>, Misc. No. 2:01-0007, slip op. at 2 n.1 (S.D. W. Va. May 21, 2002).

The court's opinion further (1) discussed the nature of a suggestion action, (2) observed that the purpose of garnishment "'is to divert to the judgment creditor a payment due to judgment debtor by a third person[;]'"[4] (3) noted plaintiffs were entitled to have the remaining payments, otherwise payable to City National Bank, re-directed to them pursuant to the quoted authority[5] above, (4) surmised Beam Blasting's liability to plaintiffs for the sums paid to City National Bank following service of the suggestion might more properly be made, by "reverse implication[,]" under West Virginia Code section 38-4-10[6]; (5) observed Beam Blasting had notice of execution by way of

---

[4]The court quoted Emmons-Hawkins Hardware Co. v. Sizemore, 106 W. Va. 259, 260, 145 S.E. 438, 439 (1928).

[5]The court noted that "pursuant to West Virginia Code Section 38-5-15, the holder of the promissory note, which the Court presumes to be L.A. Samms, is ORDERED to deliver the same to Beam Blasting no later than the date upon which Beam Blasting pays to Plaintiffs the final installment due under the unsatisfied note." Construction Indus. Health & Welfare Trust v. L.A. Samms Contractor, Inc., Misc. No. 2:01-0007, slip op. at 4 (S.D. W. Va. May 21, 2002).

[6]West Virginia Code section 38-4-10 was quoted by the court. Although the entire statute is reproduced under section II, Judge Haden's opinion underscored the following statutory language in support of its analysis:

> [I]f the property be a debt or liability of a third person to the judgment debtor, whether such debt or liability be negotiable or not, any payment made by such third person to such judgment debtor shall

7

reference made to the writ of fieri facias in the suggestion; (6) noted that "pursuant to both governing statute and case law, Beam Blasting would appear to be liable for all payments made under the notes following receipt of the Suggestion[;]" and (7) ordered Beam Blasting to show cause no later than May 29, 2002, why it should not be ordered to pay plaintiffs all sums it paid over on the promissory notes following the suggestion.

On May 30, 2002, Beam Blasting responded. Beam Blasting notified the court that L.A. Samms had filed a Chapter 7 petition on May 16, 2002. It further noted that the terms of the notes were "subsequently modified orally directing Beam Blasting to make payments to the [WVEDA] and City National Bank." (Sugg. Resp. at 2). Beam Blasting stated that it could not re-direct to

---

>       discharge such third person from all further liability,
>       to the extent of such payment, whether such execution
>       be docketed or not, unless such third person had actual
>       notice of such execution

Construction Indus. Health & Welfare Trust v. L.A. Samms Contactor, Inc., Misc. No. 2:01-0007, slip op. at 5 (S.D. W. Va. May 21, 2002). In support of its reverse-implication analysis, the court quoted two decisions from the West Virginia Supreme Court of Appeals. Id. at 6 (quoting Syl. Pt. 3, Park v. McCauley, 67 W. Va. 104, 104, 67 S.E. 174, 174 (1910) ("One paying an execution debtor a debt, with notice of an execution against him, is liable therefor to the execution creditor.") and Syl. Pt. 2, Hatfield ex rel. Rose v. Cruise, 121 W. Va. 742, 742 6 S.E.2d 243, 243 (1939)("A person delivering or paying execution debtor's personalty or money to debtor with notice of execution is liable therefor to execution creditor.").

plaintiffs the stream of payments on the notes until the court ordered it to do so under West Virginia Code § 38-5-15.

After receiving notice of the Chapter 7 filing, the court vacated its May 21, 2002, memorandum opinion and show cause order, stayed the case, and directed the filing of periodic status reports.  Although the parties appear to disagree as to the effect of the May 30, 2002 vacatur order, the May 21, 2002, decision became a nullity at that point.

On October 15, 2003, the bankruptcy court lifted the automatic stay as to this action.  On March 19, 2004, plaintiffs moved the court to lift the stay previously entered by Judge Haden and to reinstate his May 21, 2002, memorandum opinion and show cause order.  Beam Blasting opposed the motion, noting that it had by that point paid all sums due and owing under the promissory notes.

## II.

In addition to others mentioned above, there are a number of post-judgment-remedy statutes potentially implicated by the parties' briefing.  The first is West Virginia Code section

9

38-4-10:

> The docketing of an execution as provided in the following section of this article shall constitute constructive notice to all persons, of such execution: Provided, however, that if the property upon which such execution is a lien be a negotiable instrument, a holder in due course of such instrument shall hold it free from the lien of such execution, whether such execution be docketed or not, and if the property be a debt or liability of a third person to the judgment debtor, whether such debt or liability be negotiable or not, any payment made by such third person to such judgment debtor shall discharge such third person from all further liability, to the extent of such payment, whether such execution be docketed or not, unless such third person had actual notice of such execution: Provided further, that any sale of property made by a merchant, dealer, or manufacturer in the regular course of the business of such person, shall pass such goods free from the lien of an execution, whether it be docketed or not.

W. Va. Code, § 38-4-10.

Next are a series of statutes found in chapter 38, article 5, dealing with proceedings in aid of execution, specifically having to do with suggestions. The first statute is West Virginia Code section 38-5-12:

> If the debt or liability of the person suggested to the judgment debtor for the money or property owned or held by such person be evidenced by a negotiable instrument, and such instrument be negotiated after service on, or notice to, the person suggested, to a holder in due course, so that such person becomes obligated to pay the money or deliver the property to such holder, the lien of the fieri facias thereon shall, to the extent of such obligation to such holder, be discharged.

W. Va. Code § 38-5-12.

The second suggestion statute is West Virginia Code section 38-5-14:

> A person suggested may, at any time before the return day of the summons mentioned in section ten of this article, deliver the property or pay the money for which the person is liable at the time of service of the summons, or a sufficiency thereof to satisfy the execution, and shall thereby be discharged from any further liability under the execution, and, as to the property so delivered and/or money so paid, the person shall be discharged from all liability whatsoever to the judgment debtor: Provided, That if the obligation upon which the person is indebted to the judgment debtor is evidenced by a negotiable instrument, the obligation shall not, as to a holder in due course, be discharged by the payment: Provided, however, That the right of a holder in due course, of a negotiable warehouse receipt, bill of lading, or other negotiable instrument for any property so delivered, shall not be impaired by the delivery. If any payment or delivery is made to the officer under the provisions of this section, the officer shall give a receipt for, and make a return of, what is so paid and delivered.

W. Va. Code § 38-5-14.

The third suggestion statute of apparent relevance here is West Virginia Code § 38-5-15:

> If it appears from the answer of the person suggested that, at the time the writ of fieri facias was delivered to the officer to be executed, or thereafter, and before the time of the service of the summons, or the return day of the writ of fieri facias, whichever comes first, the person was indebted or liable to the judgment debtor, or had in the person's possession or under the person's control any personal property belonging to the judgment debtor, and that the person had not, before notice of the delivery of the writ of fieri facias to the officer, paid the money or

11

> delivered the property to the judgment debtor, or upon the judgment debtor's order, and that the debt or liability to pay the money or deliver the property was not evidenced by a negotiable instrument, the court may order the person to pay the amount so due from the person and to deliver the property, or any part of the money or property, to such person as the court may designate as receiver: Provided, That if it shall appear from the answer of the person suggested, that the person's debt or liability to pay money or deliver property is evidenced by a negotiable instrument, the court may order the payment or delivery, but only upon condition that the holder of the negotiable instrument shall deliver the same to the person suggested simultaneously with the payment of the money or delivery of the property: Provided, however, That any person suggested holding property under a pledge or lien shall not be required to deliver up the property except upon payment to such person of the debt secured by the pledge or lien.

W. Va. Code § 38-5-15.

As noted, the court requested supplemental briefing on September 7, 2005. The parties' supplemental briefing, however, largely omits any substantive discussion of the foregoing statutes or the accompanying legal issues. Beam Blasting's supplemental brief, however, contains several new and salient facts and assertions. First, it contends that L.A. Samms "never directly received payments from Beam Blasting, LLC. All payments from Beam Blasting, LLC were made directly to City National Bank or the" WVEDA. (Sugg.'s Supp. Br. at 2). Second, it asserts the written terms of the notes "were modified orally and directed Beam Blasting, LLC to make payments to the [WVEDA] and City

12

National Bank." (Id. at 6). Third, it contends City National Bank, as an added suggestee, "had a continued obligation to the judgment creditor for any sums coming into its possession following notice of execution." (Id. at 3).

These additional assertions, along with the briefing to date, raise several unanswered questions that could impact the ultimate decision under the foregoing statutes. First, one ponders whether payments were being made to City National and WVEDA as merely substitute payees or as holders in due course of Beam Blasting's promissory notes to L.A. Samms. The court notes that L.A. Samms' Chapter 7 petition lists no assets and that neither the WVEDA nor City National Bank are listed as creditors. The circumstances surrounding the promissory notes are significant because, assuming they qualify as negotiable instruments under West Virginia Code section 46-3-104(a), sections 38-5-12, 14, and 15 each contain special provisions relating to such instruments.

Second, there is little indication concerning what, if any, effect the Chapter 7 proceeding had, or continues to have, on the issues presented. For example, it appears from the Chapter 7 petition that plaintiffs' claim was disputed by L.A. Samms. There is no indication why the claim was disputed or any

13

other attachment from the bankruptcy court indicating how the claim was handled, if at all.  Beam Blasting, however, appears to suggest that the bankruptcy court was, and perhaps remains, the appropriate forum to resolve this matter.

Third, the parties pay little heed to the interplay between West Virginia Code sections 38-5-14 and 15.  It would appear that under these statutes a suggestee has at least two options when served.  On the authority of section 38-5-14, the suggestee may simply pay over to the judgment creditor the money for which it is liable at the time of service and then be discharged from any further liability under the execution, or to the judgment debtor, as to the amount paid.  As noted though, an important caveat exists under this statute when a negotiable instrument is involved: if the instrument has been negotiated to a holder in due course, the suggestee cannot count on a discharge of his liability if he makes payment to the judgment creditor.

As an alternative to immediately paying the judgment creditor, the suggestee can also await an order of the court to make the payment under section 38-5-15, whether or not a negotiable instrument is involved.  Although that very relief was awarded plaintiffs by the May 21, 2002, memorandum opinion and show cause order, its vacatur results in the restoration of the status quo that existed prior to its entry.

14

Finally, although plaintiffs rely heavily upon the section 38-4-10 analysis contained in the now-vacated May 21, 2002, memorandum opinion and show cause order, they fail to undertake a step-by-step analysis of the statute, in view of the facts in this case, to demonstrate their entitlement to rely upon its terms.  If plaintiffs expect to receive the benefit of section 38-4-10, or the suggestion statutes found in chapter 38, article 5, they will need to make such a showing.

Based upon the foregoing discussion, the court ORDERS as follows:

1. That plaintiffs' motion to lift stay, reinstate this civil action and re-address their motion for all monies improperly paid to defendant L.A. Samms Contractor, Inc., be, and it hereby is, granted as moulded;

2. That plaintiffs may file an appropriate motion no later than April 14, 2006, seeking any further relief they desire.

3. That the motion must be accompanied by a thorough, supporting legal memorandum addressing the foregoing issues, any relevant case law, and any related matters counsel desire to bring to the court's attention.

    4.    That the suggestees shall file responses, governed by the same expectations, no later than April 28, 2006.

    5.    That plaintiffs may reply to the responses no later than May 9, 2006.

In advance of the further briefing, the parties are encouraged to explore the potential for an amicable resolution of this matter.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

                              DATED:  March 17, 2006

                              John T. Copenhaver, Jr.
                              United States District Judge