```
           UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF WEST VIRGINIA
                CHARLESTON DIVISION
```

CONSTRUCTION INDUSTRY HEALTH
AND WELFARE TRUST, PAINTERS
LOCAL 970 GROUP, et al.

       Plaintiffs,

v.                              MISCELLANEOUS ACTION NO. 2:01-007

L.A. SAMMS CONTRACTOR, INC.,

       Defendant.

BEAM BLASTING, L.L.C. and
CITY NATIONAL BANK

       Suggestees.

## MEMORANDUM OPINION AND ORDER

Pending is plaintiffs' motion for additional relief filed April 14, 2006.[1]

                              I.

On September 20, 2000, plaintiffs instituted an ERISA action against L.A. Samms Contractor, Inc. ("L.A. Samms") in the United States District Court for the Eastern District of Kentucky.  They sought unpaid contributions, liquidated damages,

---

[1] Until June 18, 2004, this action was assigned to the Honorable Charles H. Haden II, now deceased.

administrative late filing fees, interest, attorney fees, and costs. On January 24, 2001, after L.A. Samms failed to appear or otherwise defend, Judge Karl S. Forester entered a default judgment order. The face amount of the award, excluding interest, fees, and costs, was $89,773.80. Judge Forester later entered a second judgment order awarding plaintiffs fees and costs in the amount of $2,229.40.

Following entry of the judgment orders, plaintiffs came to believe that one of the suggestees, Beam Blasting, L.L.C. ("Beam Blasting"), an entity located in Charleston, West Virginia, was amortizing two promissory notes to L.A. Samms. Upon learning of this apparent stream of payments from Beam Blasting, plaintiffs registered their foreign judgments in this district on February 7, and July 6, 2001, respectively.

On October 10, 2001, plaintiffs transmitted to the Clerk in this district a writ of execution, suggestion, and a summons and process receipt and return. On October 12, 2001, the Clerk transmitted the suggestion to the United States Marshal for service upon Beam Blasting. The Marshal then served the suggestion via certified mail, return receipt requested. The return receipt lists a date of delivery of October 23, 2001, with the signature of "S.K. Burdette" appearing thereon. The

suggestion noted the foreign judgments and their amounts.  It also contained the following admonition:

> A Writ of Fieri Facias has been issued upon the Default Judgment and Order Awarding Attorney Fees and Costs, and is now in the hands of the United States Marshal for the Southern District of West Virginia, unpaid and unsatisfied.  Accordingly, the Plaintiffs, by counsel, suggest that there is liability, by reason of the lien of said Writ and upon Beam Blasting, L.L.C., Charleston, West Virginia, the Promisor under two (2) Promissory Notes payable to L.A. Samms Contractor, Inc., who is not [sic] the Default Judgment debtor.

(Suggestion at 2).[2]

On November 2, 2001, Beam Blasting answered the suggestion.  Beam Blasting noted it previously had purchased assets from L.A. Samms pursuant to an Asset Purchase Agreement.  The purchase was consummated by Beam Blasting when it delivered to L.A. Samms the two referenced promissory notes.  The first promissory note, in the amount of $61,756.29, was paid by Beam Blasting in monthly installments of $1,766.64 to City National Bank ("City").  The second note, in the amount of $36,103.50, was paid by Beam Blasting in monthly payments of $1,243.78 to the West Virginia Economic Development Authority ("WVEDA").

---

[2]The writ was never served on L.A. Samms.  It is found in the official file with the designation "Returned Unexecuted--Expired" along with the notation that Larry A. Samms, L.A. Samms' president, could not be located.

On February 7, 2002, plaintiffs moved for an order releasing funds. They noted the amounts of the foreign judgments, service of the suggestion, and other antecedents, and then observed "neither promissory note requires Beam Blasting . . . to make the payments owed to L.A. Samms to the other entities mentioned above." (Pls.' Mot. at 2). Plaintiffs requested the court to "enter an Order directing Beam Blasting, L.L.C. to make all further payments under the above-referenced promissory notes directly to Plaintiffs until all amounts due under the registered Judgements are satisfied." (Id.)

On February 21, 2002, Beam Blasting responded to the motion. It noted that, as of the time of its answer, it had completed all payments on the promissory note held by WVEDA. Beam Blasting then noted it continued to amortize the promissory note held by City. The response brief then concludes with a "WHEREFORE" clause asking that plaintiffs' motion be denied in view of the full payment to the WVEDA. No further mention was made of the monies being paid to City.[3]

---

[3]On March 4, 2002, the court noted the briefing was unclear concerning City's interest in the promissory note. City was then joined as an additional suggestee. In a footnote, the opinion of the court noted that, in view of the full payment of the WVEDA note, only the City note "remain[ed] in issue." Construction
(continued...)

In a February 21, 2002, reply brief, plaintiffs contended as follows:

1.  Under West Virginia Code § 38-5-14 Beam Blasting, L.L.C. had the option of paying the monies covered by the Suggestion to Plaintiffs "before the return day of the summons" served along with such Suggestion. If Beam Blasting had made such payment to Plaintiffs, it would have been "discharged from any further liability under the execution." Id. However, Beam Blasting apparently chose not to make such payment.

2.  Beam Blasting did not make the payment under the option set forth in § 38-5-14. Instead it filed an Answer to the Suggestion as required by West Virginia Code §§ 38-5-10 and 38-5-13.

3.  Pursuant to West Virginia Code § 38-5-15, after filing its Answer Beam Blasting was to make no further payment to Judgment Debtor L.A. Samms Contractor, Inc. until further Order from this Court.

4.  As admitted in Beam Blasting's Response submitted to the court on February 21, 2002, Beam Blasting continued to make the monthly payments under the Promissory Notes owed to Judgment Debtor L.A. Samms after receiving and being served with the Suggestion and filing an Answer in this action.

---

[3](...continued)
Indus. Health & Welfare Trust v. L.A. Samms Contractor, Inc., Misc. No. 2:01-0007, slip op. at 1 n.1 (S.D. W. Va. Mar. 4, 2002).

On April 26, 2002, City answered the suggestion. Unfortunately, the mystery surrounding its involvement with the note continued. In its one page answer, City responded only that "[a]t the time of the said service of said Suggestion on the said City . . . , it had no money in the name of L.A. Samms Contractor, Inc. in its possession or under its control." (City Ans. ¶ 2).

> In fact Beam Blasting actually prepaid and satisfied the Promissory note owed to L.A. Samms in the amount of thirty-six thousand one hundred three dollars and fifty cents ($36,103.50). . . .
>
> 5. Under West Virginia Code § 38-5-18 Beam Blasting is liable to Plaintiffs for all payments made under the Promissory Notes after being served with the Suggestion in this action.

(Pls.' Reply at 2-3).

On May 21, 2002, the court entered a memorandum opinion and order to show cause. The court granted the motion for an order releasing funds and directed Beam Blasting to show cause why it should not further be ordered to compensate plaintiffs for all sums paid on the promissory notes after actual notice of the execution via the suggestion. Regarding City, the court again observed:

> The rationale behind the middleman role played by City National and the [WVEDA] is unclear. . . . City National should take note of its continuing obligation to the judgment creditor for any sums coming into its possession following notice of execution.

<u>Construction Indus. Health & Welfare Trust v. L.A. Samms Contractor, Inc.</u>, Misc. No. 2:01-0007, slip op. at 2 n.1 (S.D. W. Va. May 21, 2002).

The court's opinion further (1) discussed the nature of a suggestion action, (2) observed that the purpose of garnishment "'is to divert to the judgment creditor a payment due to judgment

debtor by a third person[;]'"[4] (3) noted plaintiffs were entitled to have the remaining payments, otherwise payable to City, redirected to them pursuant to the quoted authority[5] above, (4) surmised Beam Blasting's liability to plaintiffs for the sums paid to City following service of the suggestion might more properly be made, by "reverse implication[,]" under West Virginia Code section 38-4-10[6]; (5) observed Beam Blasting had notice of

---

[4]The court quoted Emmons-Hawkins Hardware Co. v. Sizemore, 106 W. Va. 259, 260, 145 S.E. 438, 439 (1928).

[5]The court noted that "pursuant to West Virginia Code Section 38-5-15, the holder of the promissory note, which the Court presumes to be L.A. Samms, is ORDERED to deliver the same to Beam Blasting no later than the date upon which Beam Blasting pays to Plaintiffs the final installment due under the unsatisfied note." Construction Indus. Health & Welfare Trust v. L.A. Samms Contractor, Inc., Misc. No. 2:01-0007, slip op. at 4 (S.D. W. Va. May 21, 2002).

[6]West Virginia Code section 38-4-10 was quoted by the court:

[I]f the property be a debt or liability of a third
person to the judgment debtor, whether such debt or
liability be negotiable or not, any payment made by
such third person to such judgment debtor shall
discharge such third person from all further liability,
to the extent of such payment, whether such execution
be docketed or not, unless such third person had actual
notice of such execution

Construction Indus. Health & Welfare Trust v. L.A. Samms Contactor, Inc., Misc. No. 2:01-0007, slip op. at 5 (S.D. W. Va. May 21, 2002). In support of its reverse-implication analysis, the court quoted two decisions from the West Virginia Supreme Court of Appeals. Id. at 6 (quoting Syl. Pt. 3, Park v. McCauley, 67 W. Va. 104, 104, 67 S.E. 174, 174 (1910) ("One
(continued...)

execution by way of reference made to the writ of fieri facias in the suggestion; (6) noted that "pursuant to both governing statute and case law, Beam Blasting would appear to be liable for all payments made under the notes following receipt of the Suggestion[;]" and (7) ordered Beam Blasting to show cause no later than May 29, 2002, why it should not be ordered to pay plaintiffs all sums it paid over on the promissory notes following the suggestion.

On May 30, 2002, Beam Blasting responded. Beam Blasting notified the court that L.A. Samms had filed a Chapter 7 petition on May 16, 2002. It further noted that the terms of the notes were "subsequently modified orally directing Beam Blasting to make payments to the [WVEDA] and City . . . ." (Sugg. Resp. at 2). Beam Blasting stated that it could not re-direct to plaintiffs the stream of payments on the notes until the court ordered it to do so under West Virginia Code § 38-5-15.

---

[6](...continued)
paying an execution debtor a debt, with notice of an execution against him, is liable therefor to the execution creditor.") and Syl. Pt. 2, Hatfield ex rel. Rose v. Cruise, 121 W. Va. 742, 742 6 S.E.2d 243, 243 (1939)("A person delivering or paying execution debtor's personalty or money to debtor with notice of execution is liable therefor to execution creditor.").

After receiving notice of the Chapter 7 filing, the court vacated its May 21, 2002, memorandum opinion and show cause order, stayed the case, and directed the filing of periodic status reports.  Although the parties appear to disagree as to the effect of the May 30, 2002 vacatur order, the May 21, 2002, decision became a nullity at that point.

On October 15, 2003, the bankruptcy court lifted the automatic stay as to this action.  On March 19, 2004, plaintiffs moved the court to lift the stay previously entered by Judge Haden and to reinstate his May 21, 2002, memorandum opinion and show cause order.  Beam Blasting opposed the motion, noting that it had by that point paid all sums due and owing under the promissory notes.

On September 7, 2005, the court requested supplemental briefing.  The court entered a memorandum opinion on March 17, 2006, noting the supplemental briefing was deficient insofar as it attempted to address extant legal issues.  In addition to other concerns, the court observed as follows:

> Beam Blasting's supplemental brief, however, contains several new and salient facts and assertions. First, it contends that L.A. Samms "never directly received payments from Beam Blasting, LLC. All payments from Beam Blasting, LLC were made directly to City National Bank or the" WVEDA. (Sugg.'s Supp. Br. at 2). Second, it asserts the written terms of the notes "were

modified orally and directed Beam Blasting, LLC to make payments to the [WVEDA] and City National Bank." (Id. at 6). Third, it contends City National Bank, as an added suggestee, "had a continued obligation to the judgment creditor for any sums coming into its possession following notice of execution." (Id. at 3).

These additional assertions, along with the briefing to date, raise several unanswered questions that could impact the ultimate decision under the foregoing statutes. First, one ponders whether payments were being made to City National and WVEDA as merely substitute payees or as holders in due course of Beam Blasting's promissory notes to L.A. Samms. The court notes that L.A. Samms' Chapter 7 petition lists no assets and that neither the WVEDA nor City National Bank are listed as creditors. The circumstances surrounding the promissory notes are significant because, assuming they qualify as negotiable instruments under West Virginia Code section 46-3-104(a), sections 38-5-12, 14, and 15 each contain special provisions relating to such instruments.

Second, there is little indication concerning what, if any, effect the Chapter 7 proceeding had, or continues to have, on the issues presented. For example, it appears from the Chapter 7 petition that plaintiffs' claim was disputed by L.A. Samms. There is no indication why the claim was disputed or any other attachment from the bankruptcy court indicating how the claim was handled, if at all. Beam Blasting, however, appears to suggest that the bankruptcy court was, and perhaps remains, the appropriate forum to resolve this matter.

. . . .

Finally, although plaintiffs rely heavily upon the section 38-4-10 analysis contained in the now-vacated May 21, 2002, memorandum opinion and show cause order, they fail to undertake a step-by-step analysis of the statute, in view of the facts in this case, to demonstrate their entitlement to rely upon its terms. If plaintiffs expect to receive the benefit of section 38-4-10, or the suggestion statutes found in chapter

10

38, article 5, they will need to make such a showing. (<u>Id.</u> at 12-13).

The court set an additional briefing schedule in the hope of illuminating these and other issues essential to the determination of whether relief should be awarded. The briefing schedule provided as follows:

2. That plaintiffs may file an appropriate motion no later than April 14, 2006, seeking any further relief they desire.

3. That the motion must be accompanied by a thorough, supporting legal memorandum addressing the foregoing issues, any relevant case law, and any related matters counsel desire to bring to the court's attention.

4. That the suggestees shall file responses, governed by the same expectations, no later than April 28, 2006.

5. That plaintiffs may reply to the responses no later than May 9, 2006.

(<u>Id.</u> at 15-16).

In its opening brief filed April 14, 2006, plaintiffs contend (1) neither City nor WVEDA received payments as holders in due course because there is no evidence L.A. Samms transferred the promissory notes to either entity pursuant to state law, (2) WVEDA and City were, at best, substitute payees, (3) the promissory notes were not disclosed in L.A. Samms' bankruptcy, plaintiffs claim was left unsatisfied there, and the Chapter 7 proceeding is now closed, (4) Beam is liable to them for all sums

11

paid on the promissory notes after notice of the execution pursuant to West Virginia Code §§ 38-4-9, 38-4-10, 38-5-15 and precedent from the West Virginia Supreme Court of Appeals.

From prior filings it appears that the note on which payments were made by Beam to WVEDA was paid in full by the time of Beam's answer on November 2, 2001, to the suggestion that was delivered to it 10 days earlier on October 23, 2001. If Beam did pay that note by the time it received the suggestion, only the note on which Beam made payments to City remains in issue, as indicated in a footnote to the court's order of March 4, 2002.

In Beam's response filed April 28, 2006, Beam seems to agree that neither City nor WVEDA was a holder in due course. In an earlier filing of May 30, 2002, Beam stated that the terms of the notes were "subsequently modified orally directing Beam . . . to make payments to the [WVEDA] and City . . . ." In its April 28, 2006, submission, Beam contends that L.A. Samms in effect assigned the notes to City and WVEDA and directed Beam to make the payments to those entities. (See Beam's Resp. at 3 ("L.A. Samms intended to orally assign[] its obligation to City . . . to Beam, and/or orally assign City . . . payments due from Beam. . . . . . Beam continued to make payments under the oral assignment directly to City . . . until the note was paid off. . . . L.A.

12

Samms intended to transfer its debt due to City . . . to Beam for consideration.")

Beam further asserts this view of events is consistent with the record in the bankruptcy case reflecting that (1) the promissory notes were not listed on any schedule as receivables, and (2) City was not listed as a creditor. Beam asserts it was a debtor to City, not a creditor of L.A. Samms, and that City was, in turn, Beam's creditor.

On April 28, City also responded. The filing offers a host of previously undisclosed factual information that bears directly on the relief requested by plaintiffs. First, City discusses the affidavit of Jack Cavender, a City Senior Vice-President, attached to its response brief. The affiant attests to the following:

4.  That on or about November 20, 1998, L.A. Samms . . . obtained a loan from City . . . in the amount of . . . $89,857.79 . . . .

5.  That monthly payments, in the amount of . . . $1,776.64 . . . were made from L.A. Samms . . . to City . . . from December 16, 1998 until August 25, 2000.

6.  That on September 29, 2000, Beam . . . signed a Promissory Note to L.A. Samms . . . for the remaining balance on the City . . . loan by which it assumed repayment of the City . . . loan.

7.  That at that time, the balance of the loan was $61,720.21 . . . and the Promissory Note was for the

13

>     amount of . . . $61, 756.29 . . ., the difference being
>     for a late fee and per diem interest.
>
> 8.  That thereafter, Beam . . began making payments to
>     City . . . $1,766.64 . . . for the repayment of the
>     subject loan on behalf of L.A. Samms . . . which was
>     completed on or about July 24, 2003.

(Aff. of Jack Cavender ¶¶ 4-8).

City also attached correspondence indicating that Beam had assumed the City loan for L.A. Samms. A September 15, 2000, letter addressed to L.A. Samms from Beam states as follows:

> Per our discussion, Beam . . . is willing to take over several debts of L.A. Samms . . . in the amount of approximately $111,000.
>
> It is further understood that L.A. Samms . . . will assist Beam . . . in the transfer of various notes on equipment and debts to Beam . . . . These notes and debts, in general, are as follows:
>
>     . . . .
>
>     City National Bank -- Loan
>     Economic Development Authority -- Loan

(Letter from Joe Beam to L.A. Samms Contractor, Inc. at 1 (Sept. 15, 2000)). Plaintiffs have not replied to the responses filed by Beam and City.

## II.

In the March 17, 2006, memorandum opinion, the court

14

set forth several post-judgment-remedy statutes potentially implicated by plaintiffs' request for relief.  Each of those statutes appear to suggest the prerequisite of a payment by a third person to the judgment debtor.  <u>See</u>, <u>e.g.</u>, W. Va. Code § 38-4-9 ("If the property, upon which such writ is a lien, is a debt or liability of some third person to pay money or deliver property to the judgment debtor . . . ."); W. Va. Code § 38-4-10 ("and if the property be a debt or liability of a third person to the judgment debtor . . . ."); W. Va. Code § 38-5-15 ("If it appears from the answer of the person suggested that, at the time the writ of fieri facias was delivered to the officer to be executed, or thereafter, and before the time of the service of the summons, or the return day of the writ of fieri facias, whichever comes first, the person was indebted or liable to the judgment debtor, or had in the person's possession or under the person's control any personal property belonging to the judgment debtor, and that the person had not, before notice of the delivery of the writ of fieri facias to the officer, paid the money or delivered the property to the judgment debtor, or upon the judgment debtor's order, and that the debt or liability to pay the money or deliver the property was not evidenced by a negotiable instrument . . . .").  The arrangement between L.A. Samms, Beam Blasting, and City presently appears to be of a different variety.

The response filed by City indicates no debt was owed to L.A. Samms by Beam on the date of the suggestion. As the record currently stands, it instead appears the debts to City and WVEDA were assumed by Beam, at which time it became the debtor on the obligations and City and WVEDA its creditors. Plaintiffs have chosen not to reply, foregoing an opportunity to correct any misconception in this regard. The court concludes plaintiffs have not satisfied the burden of demonstrating their entitlement to the relief requested.

The court, accordingly, ORDERS that plaintiffs' motion for additional relief be, and it hereby is, denied. Should plaintiffs desire to pursue this matter further, they may move the court to schedule a status conference no later than March 15, 2007. Absent such a motion, the court will treat the request for post-judgment relief as abandoned and dismiss this matter from the docket.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED: March 6, 2007

John T. Copenhaver, Jr.
United States District Judge